Case number 20-5304, Judicial Watch, Inc. Appellant v. United States Department of Justice. Mr. Orfanides for the appellant, Mr. Poulin for the appellate. Mr. Orfanides, good morning. Morning, may it please the court. Paul Orfanides for Appellant Judicial Watch. When we briefed, when we filed this, the appeal and briefed this case, the court had not yet cited the Reporters Committee v. FBI case that we cited in our July 28th letter. In our view, that case confirms the requirements of the FOIA Improvements Act of 2016 that we spend a fair amount of time briefing. In our view, the FOIA Improvements Act is a change in how deliberative process exemption B-5 claims are to be handled. Really now, I think the question boils down to, do the agency declarations satisfy the FOIA Improvements Act standard as articulated in the Reporters Committee decision? Our view is they clearly do not, that what they are is more of the routine sort of assertions of deliberative process that predated the FOIA Improvements Act. So for example, well, first of all, there are four records and these are drafts of either a decision or an instruction. So we don't even know if this is a decision, if these reflect like preliminary thoughts on about a decision or if they're instruction. The declarations use both terms, an instruction to department staff on not to enforce the President Trump's executive order. So we have one draft that was sent in the morning. We have another draft that was sent in the early afternoon from, I guess, the time he would have been acting Deputy Attorney General Axelrod to acting Attorney General Yates. Then we have two drafts that acting Attorney General Yates sent to herself. We don't know who prepared these. We don't know when they were prepared. We don't know if they were solicited or unsolicited. We don't even know if they reflect the decision not to defend the executive order or if they are simply instructions or explanations about that decision. What the agency... Counsel, can you clarify, are you challenging both that the documents were not pre-decisional and not deliberative or are you just challenging that they are not deliberative? We challenge both. I think the harm, the shortcomings in the harm analysis of the declarations make it much more clear. The law requires that the agency show reasonable foreseeability that harm is going to result from the disclosure of these records. And because we don't know anything about them, except we know approximately the time frame, we know how the records flowed from the Deputy Attorney General to the Attorney General and then she sent two of them to herself. That's all we know. The declarations use generic terms, working drafts, successive versions, multiple revisions made by department staff. Now that's really curious because the last two documents themselves, it would appear that to the extent they reflect any revisions, they would be the revisions of the Attorney General and that's staff. My point is that we really know so little about these documents that it's very difficult to make any kind of harm analysis about what harm would result to interest protected by the deliberative process privilege if they were to be released. We don't know if these are just one option and draft two had a second option. We don't know that. We don't know if draft two is just different because it may... Well, if they did have two options, let's assume we knew that, that would be a pretty good argument that it's deliberative, wouldn't it? I think it would, that's right, but we don't know that. Your point is you just don't know. Right, that's right. And even if it's just one option, we don't know if it's changing happy to glad or adding commas or moving paragraphs or sentences around. And there's just no information from which the court can provide, can undertake any sort of harm analysis. In the district court, I know we have a lot of case law, which we're trying to protect the district courts from having to plow through lots of contested documents. And so the district judges can rely on the declarations, but did anybody, did you ever ask the district court here to just, why don't you just look at the letters in camera? I don't recall. There were two rounds of briefing. So there was an initial summary judgment motion and cross motion. Yeah, I understand that. But do you never ask for her to just, the district court, well, just please look at the documents. There's only four of them and they're each a half a page. I don't believe so, but I can check that for rebuttal. I mean, it seems sort of odd that we're trying to decide whether a document is deliberative that we, none of us have seen, and it's their documents that we could all read in two minutes. That's right. And then we could, then we could avoid all of this, all of this trying to figure out what is in the documents and what isn't in the documents. That's absolutely right. It doesn't, it just doesn't make any sense to me. Why would we do this? I don't get it. I think how much easier it would be for all the parties if you wouldn't need all the declarations. You wouldn't need anything. You just look at the documents. This is the process that's in place. And then, you know, especially with a very short document, perhaps it doesn't make sense, but you know, that's where we are. Unless the court has any further questions, I'll reserve the rest of my time for rebuttal. All right, Mr. Pullum. Thank you very much, Thomas Pullum, for the Apolli Department of Justice. Judicial Watch seeks access to four drafts of a document explaining one of the most serious decisions that an attorney general can make, the decision to decline to defend the legality of an executive order. As this court recently explained in the Reporters' Committee case, proposed drafts of non-final agency decisions that are still undergoing review, debate, and editing are the type of deliberative work in progress that falls at the core of the deliberative process privilege. So is it your position, is it the government's position? I mean, it's interesting that you use that quote, because if you strip away from the Brinkman affidavits, all the conclusive language that doesn't relate to the documents, basically, all we know is that these are drafts, right? That's what we know, they're drafts. And you know, if that's all you need to do to protect them under Exemption 5, then it's hard for me to imagine anything that wouldn't be protected. And also, you mentioned Reporters' Committee, well, the documents in Reporters' Committee were drafts, and we ruled that wasn't sufficient to protect them. So you see my point? That's what kind of worries me about this. It seems like, as I said, basically, what you've got is drafts. And drafts can't, characterizing the documents can't be enough to protect them under Exemption 5, particularly after the FOIA Improvement Act was passed. Do you disagree with any of that? Well, I just want to be clear that the FOIA Improvement Act does not affect the scope of the privilege. It may affect the ability of the, or it does affect the ability of the government to withhold, but when we're just talking about privilege, it doesn't change the scope of that. So your point is, your point's well taken. That's a good question. But just to answer the question, just under the standard Exemption 5 case law that we have. Please. So I think the best resource here is the Supreme Court's recent decision in the Sierra Club case that came out earlier this year. There, the court said that a draft is, by definition, a preliminary version of a piece of writing subject to, subject to feedback and change. And for that reason, the court said a draft document will typically be pre-decisional because something, calling something a draft communicates that it's not yet final. And what we look at, what matters, the court said, is whether the document issue communicates a policy on which the agency has settled, whether the agency treats the document as its final view. I've read that case, but that case is about whether the document is pre-decision. The argument was that even though it was sort of a draft, it was in effect final, pre-decision. It wasn't about whether it was deliberative. There's no discussion. I didn't see any discussion in the Sierra Club about whether it was deliberative. The whole question was responding to the Sierra Club's argument that the agency couldn't, couldn't protect them under exemption five because they were final. That's what that case is about. So the cases, the cases you have to deal with are cases like Machado and Dudley, you know, where, you know, those are typical cases. We found those documents were deliberative, but only after the government told us a whole lot about what was being deliberated. We knew who was doing the deliberating and where they were in the decision-making process. We don't know any of it. Well, I think we, we do here. What do we know about who, who these people are? So the Supreme Court and, and this court have described a deliberative document as one that's used to help the agency prepare for- Could you just answer, don't, please- Well, I just think it's setting the stage. Just don't- With a citation to a Supreme Court case. Certainly. I just want to know, I'm, I'm trying to understand this case and it would help me a whole lot if you would tell me where we have the kind of information here that we had in Dudley and these other cases. I just, we, we don't, we don't know who wrote them. We don't know what was deliberative about them. We don't know whether the deliberation was over substance or style. We don't know any of that. So there, there's two pages in the JA that I think are helpful here. Yeah, sure. Let's look at them. So we have JA 158- Right. Describing the documents that they reflect successive versions of a draft. So they show the internal development of the department's final decision. Okay. Let's stop it. Let's, let's stop and talk about that soon. Okay. Successive development. Right. But successive development of what? I mean, it could be that the first draft had the paragraphs in a different order than the second draft. That wouldn't be deliberate, right? I think it would be under the sports decisions in Dudman and- It would be? Well, Dudman and Russell talked about- How would a lawyer, a lawyer who drafts a, who is recommending that the order of two paragraphs be switched, how would, how would that person be chilled in his or her future advice to that spirit? I think to, to answer that question, we look at paragraph 77 in the joint appendix. Okay. Which talks about how statements made by the attorney general on these sensitive and significant issues are subject to multiple rounds of editing and revision with intense, intense attention to matters of emphasis, phrasing, and tone. Okay. Because these statements set policy for a large department and inform the public about the actions and priorities of that department, the precise language chosen is a matter of great concern. Yeah. So I hear you basically telling us that any draft of a document to the attorney general is exemption five, right? That's your point. If that draft has not been adopted as final, yes. Well, of course not. Any draft to the attorney general is, is deliberate, right? I think if it involves the type of policy and editorial judgment that this court has to process that, I think that's correct. Well, here, will you look at, do you have the Yates letter there in front of you? Let me just ask you a question about it. All right. Let's look at the Yates. I just said, let's take two examples. Okay. So she, it begins with two sentences. One says the president signed the order, and then the second one says it's been challenged. Suppose an earlier draft of this, suppose that was just one sentence. In other words, suppose the sentence had said the president's order has now been challenged in more than one jurisdiction. In other words, that the lawyer in the attorney general office was saying to the attorney general, this would read better if it was two sentences instead of one sentence. Is that deliberative? So I, I think so, if it goes to the, I think because in this context matter as the, the declaration says matters of emphasis, phrasing and tone are so important. Now it may be. But how about this one that I just asked you about? I mean, the problem, and this isn't your fault. I don't mean to be critical. You're, you're, you're dealing with a bunch of declarations here. That make generic statements. And I understand that we all that's, that's sort of a problem here. But the question is, we have to decide about these documents, which we can't see. And I'm just asking you as a hypothetical, how determining whether this is, this should be two sentences rather than one, but could possibly implicate the values underlying exemption five. Well, I think there might be a, a difference between say a standalone suggestion that says, you know, this should be one sentence as opposed to two, instead of a series of full drafts, where we see the whole thing with all of these changes to specific wording that the declaration says are so important because of what they communicate to the public. I can definitely, you're so, you're totally right. I can definitely imagine changing something from one sentence to two that would actually have a substantive effect. But I'm asking about this. I mean, there could be some, there could be some editorial changes that aren't, but in Dudman communications, this court talked about the importance of. Let me ask you about one other, just, just one. Okay. You see the sentence in there similarly in litigation, DOJ civil division lawyers are charged with advancing reasonable legal arguments. See that argument that says, suppose one of the earlier drafts didn't have that sentence and the lawyer and the staff lawyer said, you know, we really ought to add something that says that, that the civil division lawyers are charged with advancing reasonable legal arguments. I mean, you know, is that deliberative? A statement of fact. It is, but in choosing which statements of fact to go into a document can be the type of editorial and deliberative judgment that imposes. But what about this one? Agreed. But what about this one? I think it, it, it could, because that kind of sets the emphasis about the in recognition of the standard position, you know, the kind of default that DOJ takes. But if I could make one point about differences courts have recognized, we cited the ninth circuit case in mobile versus EPA, that a draft doesn't have to actually differ from a final version in order to be deliberative. So when we're just looking at whether the privilege applies, we don't look at the kind of degree of difference over successive drafts. Now, this might be relevant, certainly to the harm inquiry. But when we're talking about the privilege, the question is whether it was the final diversion, final version that communicates the policy of the agency. I just have one more question. So we have two kind of major cases here that we can look to. One is Machado and the other is Reporters Committee. And they, they, one went one way and one went the other way. So can you, will you take a look, just tell me, take the Brinkman declarations, for example. What's your best argument that they're more like the declarations in Machado which were successful and less like the ones in Reporters Committee which were deficient? So I think we have two reasons. One is Reporters Committee said that in the Machado declarations, it was boilerplate and generic assertions that the release of any deliberative material would entail internal discussions. And the flaw was that Hardy did not explain the particular sensitivity of the types of information at issue or the role they play in the decision process. Here in paragraph 77, it's specifically about public statements drafted by the Attorney General. So it satisfies the Machado standard. So that's really interesting. That's helpful to me because, so what you're saying here, because I actually, I, I, I compared the, the unsuccessful affidavit in Reporters Committee to the Brinkman affidavits here. And frankly, they're indistinguishable as far as I can tell, except for one factor, which you just put your finger on, which is here, these are drafts of the Attorney General. And so that brings us back to your earlier point, which is interesting, but I'm kind of wondering where, what the support for it is, which is basically the government's position here is that drafts of documents for the Attorney General of the United States are exemption five, right? Well, this brings me to my second point, if I could, if I wrote an opinion and said, the government argues that drafts of documents for the Attorney General are privileged by themselves, would that be accurate? I don't think it would be any draft, but I think it could be a, a draft involving, setting out the reasoning for this type of, of policy decision. Yes. And to that point, Reporters Committee in assessing emails, emails concerning the director of FBI's letter to the editor of the New York Times, the court said the very context and purpose of those communications make the foreseeability of harm manifest. So I think that's another part of Reporters Committee that compares. Now you're doing what you accused me of doing earlier. That's about the FOIA improvement, isn't it? No, it is. But so I was just, I was trying to get back to my second point, but even for the purpose, I mean, with respect to the privilege, I apologize. The Court and Reporters Committee found those emails privileged, relying on, it said the privilege may extend to an existing policy in the midst of public debate over whether the government should have such a policy. And I think that's comparable here. We have the executive order and the Attorney General is deciding whether that will be defended or not and how to communicate that both to the public and to members of the department that would implement that decision. All right, Judge Tatel, any more questions? No, thank you. All right, Judge Wilkins, any questions? No. Okay, then Madam Clerk, if you would give Mr. Orfinates the remainder of his time. Thank you, Gar. In response to Judge Tatel's question about whether a request was made for camera review, I checked the file, the record, and I did not see that by either party. And there's just one other point I wanted to make about the difference between the Machado case or Amatis and Reporters Committee. The documents at issue in the earlier case, Amatis, were part of a regularized administrative process of adjudicating internal or administrative FOIA appeals. So I think the role those documents played was well known and that filled in some of the gaps that are missing in both Reporters Committee and in our case where what you really have are sort of one-off. Reporters Committee being, you know, response to a draft OIG investigation and related items. Here, this is also, it's sort of a one-off. So it was more of, in both our case and Reporters Committee, it was sort of like an ad hoc process. So without the additional information, without, you know, a more full description of what these records are, it's really not possible to either to make any conclusion about the deliberative process or especially the harm analysis. But what we do know about the documents, what's obvious from the context and from the declarations is that they are iterations of the articulation of the reasons for the policy decision that Acting Attorney General Yates ultimately gave to the public, right? We know that. I wouldn't say that. My understanding is that they, well, the declarations are inconsistent. They describe it as a decision and they describe it as instructions to employees of the department. So I could... But the decision is an instruction to the employees of the department, which is that we're not going to defend this policy, right? It's not inconsistent. I don't know if they're deliberating the decision or if they're deliberating how to instruct the department about the decision, which to me is crucial to perform. Well, if they're deliberating the decision, it's pretty clear that they're deliberative, right? I'm sorry? If they're deliberating the decision, that's pretty deliberate, correct? I think it depends on the nature. Again, if they're moving sentences around or changing happy to glads or adding commas, fixing punctuation, I don't think that's necessarily deliberative. Well, I guess the point I'm getting at is that to the extent that it appears evident that this is Attorney General, Acting Attorney General Yates, both getting input in and editing her explanation for a policy decision that she's going to explain to both her staff and the people of the United States, why isn't that by its nature deliberative for reasons that were discussed in the prior questioning between Judge Tatel and counsel for the government? I think my answer would be the same, is that we need more information about the differences between the documents before we can make any kind of determination. You're not answering my question. I told you, assume that that's the nature of the discussion. Why isn't that by its nature deliberative? It could be. If one draft was, we're going to enforce the executive order, and the other draft was, we're not going to enforce the executive order, and then there were some editorial changes. I could see how that could be deliberative, but we don't know the answer to that. I guess that's part of the assumption. If I'm writing an opinion, and I move some words around and insert a citation or change a citation or break a paragraph into two parts because I want to emphasize a point, and I don't want it to get buried in a paragraph, all of that is, I mean, I've made a decision about what the outcome of the case is going to be, but all of these are changes about how I'm explaining that decision. Isn't that all deliberative? No, I would say that's wordsmithing. You don't have to prevail here. Couldn't you have answered Judge Wilkins just the opposite? Isn't your point that you don't know here? That is right. Why would you answer his question? I don't understand why you'd fight his hypothetical. It seems to me he's right that those kinds of substantive changes are clearly deliberative. I think substantive changes are, that's correct. Even language changes can be substantive. Can be. Where you put an only in a sentence can be substantive. Whether you use passive or active can be substantive. I thought your point was we don't know enough about these documents. That's right, but I thought that the hypothetical assumed that we did, so I was being more careful. Okay, all right. If there are no more questions, gentlemen, thank you, and Madam Clerk, if you'll call the last case.
judges: Henderson, Tatel, Wilkins